## 76181. MOORE v. THE STATE.
(370 SE2d 511)

BIRDSONG, Chief Judge.

Appellant Keith Moore was convicted of a violation of the Georgia Controlled Substances Act by selling (0.1 gram) cocaine to a law enforcement agent on October 25, 1986.

At trial appellant made and subsequently withdrew a motion to dismiss for lack of speedy trial. Appellant then made a motion for a continuance on the grounds of newly discovered evidence. Appellant also made a motion for disclosure of the identity of a confidential informant. The trial judge denied appellant's motion for continuance and motion for disclosure.

Certain material facts in this case are controverted. It appears that on October 25, 1986, appellant and a friend named Harris were in Gus' bar. Also in the bar that evening were two GBI agents and a confidential informant. According to both agents, the appellant approached the bar and was introduced to Agent Carwell by the informant. Appellant then asked if Agent Carwell wanted to buy any "rocks" (a street term for cocaine). Subsequently the appellant, a black man who was identified only as Isaac, a GBI agent named Carwell, and, according to Carwell, the confidential informant, entered either the women's or men's 5' x 10' rest room. Agent Carwell testified that appellant sold him cocaine in the ladies' rest room in the presence of the informant and the unidentified black man. Agent Carwell also testified that neither the informant nor the unidentified black man participated in the drug transaction. Appellant testified that he entered the men's room as a matter of need and observed Agent Carwell and Isaac already inside by themselves. Appellant further testified that he observed Isaac hand something to Agent Carwell and state its price was $20. A friend of appellant, named Harris, testified that he had been drinking with appellant in the bar in October or November. He saw Agent Carwell and a man named Isaac go to the men's room, and that while the two were still in the rest room, the appellant went to use the facilities therein. Harris saw no other person enter or leave the rest room during this time. Two or three minutes later, he observed appellant leave the facility, followed by Agent Carwell about three or four minutes thereafter, and lastly by the man named Isaac. Another GBI agent, named Ellington, testified that fol-

lowing the informant's introduction of Agent Carwell to appellant, the three men went toward the rest room area. Agent Ellington did not see the man named Isaac; however, Agent Carwell testified that an unidentified black man joined appellant just before they reached the rest room area. Thus, according to Agent Carwell there were four men present during the sale. *Held*:

1. Appellant enumerates as error that the trial court abused its discretion in refusing to grant a motion for continuance based on the grounds of newly discovered evidence. Appellant sought this continuance in order to find the missing witness "Isaac." The newly discovered evidence ground rests on appellant's contention that through no lack of diligence on his part, the defense had been searching for the wrong witness until the morning of the trial. Appellant's counsel in his brief "concedes that [appellant] did not and could not have met the strict criteria required to justify a continuance based on 'absence of a witness,' " see generally OCGA § 17-8-25, but asserts that a different criteria applies to the continuance motion made on the grounds of newly discovered evidence. At trial the appellant was unable to establish the last name of "Isaac," but introduced evidence that it may have been "Bowden or Bowen." A man believed to be the "Isaac" in question was living in Albany; however, one of appellant's witnesses had heard that "Isaac" was on the run and wanted by the police. "Isaac" was known to sell drugs. Prior to his ruling, the trial judge observed and appellant's counsel conceded that "Isaac" could not reasonably be expected to incriminate himself before the court; however, appellant's counsel did expect that if "Isaac" appeared he would testify truthfully and either support or refute the appellant's assertion that it was "Isaac" who had sold drugs to Agent Carwell.

Appellant clearly has failed to meet the statutory requirements for a continuance upon the ground of "the absence of a witness," OCGA § 17-8-25, nor has he met any other statutory criteria which under the circumstances would mandate such relief. Unless otherwise mandated by law, see, e.g., *McGuire v. State*, 185 Ga. App. 233, 236 (363 SE2d 850), " ' "[a] refusal to grant a continuance will not be disturbed by appellate courts unless it clearly appears that the judge abused his discretion in this regard." [Cits.]' " *Pope v. State*, 256 Ga. 195, 207 (345 SE2d 831). We are satisfied that no such breach of discretion occurred in this case.

2. Appellant also enumerates as error that the trial court abused its discretion in refusing to grant the defendant's motion to reveal the identity of the confidential informant.

In *Roviaro v. United States*, 353 U. S. 53 (77 SC 623, 1 LE2d 639), the United States Supreme Court held that the government's privilege to withhold from disclosure the identity of a confidential informant is limited by the underlying purpose of the privilege itself

and "the fundamental requirements of fairness." Id. at 60. Thus, the court concluded that "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Id. at 60-61. The Supreme Court declined to adopt a fixed rule of disclosure, opting instead for a balancing test which would balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." Id. at 62. The resolution of each case, accordingly, depends on the particular circumstances involved, "taking into consideration the crime charged, the possible defenses, the *possible* significance of the informer's testimony, and other relevant factors." (Emphasis supplied.) Id. at 62. In *Roviaro*, the Supreme Court, after applying the balancing test, held that it was prejudicial error not to reveal the informant's identity where the informant was the sole participant, other than the accused, in the transaction and, thus, "was the only witness in a position to *amplify or contradict* the testimony of government witnesses." (Emphasis supplied.) Id. at 64. Further, although the defendant in *Roviaro* was not in a position to interview the unidentified informant (decoy) and thereby ascertain the anticipated scope and content of his testimony, the Supreme Court concluded that "[t]he circumstances of this case demonstrate that [the informant's] *possible* testimony was highly relevant and *might* have been helpful to the defense." (Emphasis supplied.) Id. at 63-64.

In the keystone case of *Thornton v. State*, 238 Ga. 160 (231 SE2d 729), cert. den. 434 U. S. 1073, our Supreme Court, after reaffirming Georgia's policy against nondisclosure of an informant's identity, unequivocally embraced the *Roviaro* balancing test as "it is now well established as the law of Georgia." Id. at 163-164. In *Thornton* the disclosure was being sought pursuant to a *Brady* motion. In disposing of the issue, the Supreme Court first distinguished between a "decoy" or "informer-participant" (a person used to obtain evidence), and "informer-witness" (a person used to establish facts upon which to base a prosecution), and a "mere tipster" (one who provides information about criminal activity). Id. at 163. After noting that both *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) and *Roviaro* had a common basis of "fundamental fairness to the accused," the court concluded that they must be read together where the question is disclosure of the identity of an informer-witness or informer-participant "if material to the defense on the issue of guilt or punishment." Id. at 164-165. If such an informer's identity is required to be disclosed under *Brady*, the trial court should than apply the *Roviaro* balancing test. Id. at 165. However, the court observed that when "the informer is a *pure tipster*, who has neither participated in *nor witnessed* the offense, any evidence he might offer would be hearsay and inadmissi-

ble. Thus the tipster's identity could not be material to the guilt or innocence of the defendant under *Brady* or be relevant and helpful to the defense under *Roviaro*." (Emphasis supplied.) Id. at 165. Accordingly, the Supreme Court opined that if the trial court initially determined that the informant was merely a *pure tipster*, his identity should be privileged, and no further inquiry would be necessary. Id.; see *Mooney v. State*, 243 Ga. 373, 396 (254 SE2d 337) (pure tipster who had neither participated in nor witnessed the offense); *Branch v. State*, 248 Ga. 300, 301 (282 SE2d 894) (merely a tipster where not paid, took no part in offense, and not present at time of offense); see also *Johnson v. State*, 164 Ga. App. 501 (4) (297 SE2d 38) (mere tipster who had not participated in and was not present at appellant's search and arrest). Thus, one of the important factors for determining whether an informant's identity must be revealed is the "type of informer involved." *Thornton*, supra at 165.

In *Connally v. State*, 237 Ga. 203, 208 (227 SE2d 352), the Supreme Court stated "[w]ithout deciding whether or not this rule is applicable to informers as well as decoys, we hold that in any case, where the evidence sought from the unidentified source is required by the defendant on 'the mere possibility that the police might be *impeached* (it) is not enough to demand disclosure of the informer's identity.'" (Emphasis supplied.) See also *Keith v. State*, 238 Ga. 157 (231 SE2d 727) (informant's identity need not be disclosed at a probable cause hearing on a motion to suppress, as the sole question presented is whether the information offered to support the warrant meets the probable cause test).

At a probable cause hearing on a motion to suppress, the informer's privilege presents only a question of evidentiary rather than constitutional magnitude. *Keith*, supra at 158. However, "where the guilt or innocence of the accused is at stake" the invocation of the informer's privilege will raise constitutional questions. *Keith*, supra at 158, n. 2. Further, it is clear from a reading of *Roviaro* that the appellant need not conclusively establish what the informer's testimony will be before he can rely on the *Roviaro* rule. In fact, the balancing test of *Roviaro* includes consideration of "the *possible* significance of the informer's testimony." (Emphasis supplied.) *Roviaro*, supra at 62. The fact that an informant's "possible testimony was highly relevant and might have been helpful to the defense" can be established by the circumstances of the case. *Roviaro*, supra at 63-64; see also *United States v. Valenzuela-Bernal*, 458 U. S. 858, 871 (102 SC 3440, 73 LE2d 1193) (events to which a witness *might* testify, and the relevance of those events to the crime charged, may well demonstrate either the presence or absence of the required materiality).

In the case at bar, appellant was charged with the sale of cocaine. Only three or four persons were present at the time of the sale, de-

pending upon which evidence one chooses to believe. According to the GBI agents, one of the persons witnessing the sale was an informant who introduced the agents to the appellant but did not otherwise participate in the transaction. An unidentified man named "Isaac" also was present at the sale. The current location of "Isaac" is unknown, but he is believed to be "on the run" from the police. Only one GBI agent participated in the actual sale of cocaine; he testified that it was the appellant who sold him the drug. However, the appellant *took the stand in his own defense* and testified that it was in fact "Isaac" who had handed the GBI agent something, and that he merely witnessed this transaction when using the rest room facilities. The trial record demonstrates that "Isaac" is not reasonably available as a witness. Moreover in the instant case, it cannot be presumed that "Isaac's" testimony would provide a satisfactory substitute for the testimony of the informant-witness; because, as repeatedly asserted by the trial judge and as conceded by the appellant's attorney, "Isaac" cannot reasonably be expected to appear in court and incriminate himself. Thus, the informer is "the only witness in a position to amplify or contradict the testimony" of the appellant and the police officer. See *Roviaro*, supra at 64.

It is clear from the facts of this case that the informant's testimony was not just of value in the impeachment of Agent Carwell, rather it was material to the appellant on the issue of his guilt or innocence. Accordingly, the balancing test of *Roviaro* and *Thornton* must be applied. Applying that test, we find that under the currently existing facts of this case the identity of the informer should have been disclosed.

We are mindful of the long-established precedent of this court, which can be traced back to cases *prior to Thornton, Mooney,* and *Branch* that: " ' "[w]here a person merely takes an undercover police officer to a location and . . . introduces the officer to the defendant, and the officer arranges for and buys contraband from the defendant, and the person witnesses such sale, or alleged sale, such person is an informer and not a 'decoy' and a disclosure of his [identity] to the defendant is not required as a matter of law under [OCGA § 24-9-27], but rests in the discretion of the trial judge, *balancing the rights of the defendant and the rights of the state under all the facts and circumstances.*" ' " (Emphasis supplied.) *Statiras v. State,* 170 Ga. App. 739, 740 (318 SE2d 156); accord *Carver v. State,* 175 Ga. App. 599 (1) (333 SE2d 697); *Gilmore v. State,* 168 Ga. App. 76, 77 (308 SE2d 232) (also opining that "[w]here the disclosure of the informant's identity would at best serve only to furnish possible impeachment of the agent's testimony, disclosure is not appropriate considering the overriding rule of nondisclosure," and that "[u]nder the facts before the trial court, there were no discovery rights in the tipster

mandated by *Brady v. Maryland* [supra] and thus the disclosure rested within the sound discretion of the trial court"); *Carter v. State*, 165 Ga. App. 427 (301 SE2d 658); *Taylor v. State*, 136 Ga. App. 31 (2) (220 SE2d 49); see *Welch v. State*, 130 Ga. App. 18 (3) (202 SE2d 223). We find that the facts of this case distinguish it from this precedent. First, the appellant testified in his own defense and the informer's testimony reasonably can be expected to directly support or refute his testimony. Thus, the expected informant's testimony would not merely be impeaching in nature. Secondly, the tipster in this case is not a "mere tipster" within the meaning of *Thornton*, *Mooney* and *Branch*, but is under the circumstances more closely akin to an informer-witness. Thirdly, applying the balancing test of *Roviaro*, *Thornton* and *Statiras*, we find that disclosure is mandated under the *currently existing* circumstances, especially as there exists no reasonable substitute testimony for that of the informer.

Having determined that error of a constitutional magnitude has occurred in this case, we will now test for prejudice. See, e.g., *Ramsay v. State*, 175 Ga. App. 97 (3) (332 SE2d 390); *Riceman v. State*, 166 Ga. App. 825, 828 (305 SE2d 595). If the record reveals by evidence beyond a reasonable doubt that the error of nondisclosure did not affect the verdict then the error is harmless; otherwise, reversal is required. *LaRue v. State*, 137 Ga. App. 762, 764 (224 SE2d 837). We find that the trial record currently is inadequate to enable us to accomplish our judicial responsibility accurately for testing for prejudice. Accordingly, we will remand this case to the trial judge with the following direction. The State shall be required to disclose the identity of the informant to the trial judge who shall forthwith conduct a post-trial, in-camera proceeding. During the proceedings, the informant shall be placed under oath and the testimony of the informant shall be duly reported and thereafter transcribed. Care shall be exercised not to cause the informant to reveal his name, address, place of business, etc., nor to cause such information to be recorded. The transcript of the informer's sworn testimony shall be ordered to be sealed. If the trial judge determines, using the test for prejudice for errors of constitutional magnitude found in *LaRue* that prejudicial error has occurred he shall forthwith take the necessary corrective action to set aside the judgment and authorize a new trial. Conversely, if the trial judge determines that harmless error has occurred, he shall then enter judgment reaffirming the conviction and sentence and announcing that a new trial is not required. In the event that the State cannot produce the informant for in-camera proceedings, a post-trial hearing shall be conducted in the presence of the parties and the trial judge shall determine the circumstances surrounding the informer's nonavailability. The State should not be required to reveal the identity of the informant at such a post-trial

hearing. Both the defendant and the State shall be entitled to present any relevant evidence or to present argument bearing on the sole issue of whether the error in failing to reveal the informant's identity was prejudicial or harmless within the meaning of the *LaRue* test. Thereafter, the trial judge shall resolve this issue and enter an appropriate judgment. The hearing shall be recorded and a transcript thereof shall be attached to the trial record. Ga. Const. Art. VI, Sec. I, Par. IV; see generally *Thornton*, supra at 165 (use of post-trial hearing); *Pierce v. State*, 238 Ga. 126, 129 (231 SE2d 744) (discussing return of case to trial court for *Jackson-Denno* hearing); *Hicks v. State*, 255 Ga. 503, 504-505 (340 SE2d 604) (returning case for clarification of admissibility of any statements or confessions by defendant).

We believe this procedure will provide a reasonable methodology for determining whether appellant has, in fact, been prejudiced by the trial court's error in not ordering the disclosure of an informant's identity. Moreover, this procedure will assist in the "discovery of truth." See generally OCGA § 24-1-2.

The use of in-camera proceedings, as means of determining if the invocation of the informer privilege is proper, has been acknowledged with tacit approval by our Supreme Court. *Thornton*, supra at 164, n. 1. Although we recognize that some limitations exist on the use of an in-camera procedure by a defendant, compare *Tribble v. State*, 248 Ga. 274 (1) (280 SE2d 352) (use of in-camera proceedings in connection with a *Brady* motion) with *State v. Mason*, 181 Ga. App. 806 (4) (353 SE2d 915) (suppression motion hearing case), in certain instances the State may wish to request or the trial court may elect sua sponte to conduct such a procedure. This invaluable procedure can insure that both the identity of an informant can continue to be lawfully protected and that appellant's fair trial rights will be adequately safeguarded, even after an appellant has met the *threshold* requirements for disclosure of *Roviaro* and *Thornton*. For example, it may be determined during the course of a reported in-camera inquiry that the informer will testify substantially the same as the police. In such circumstances, the informer's identity normally would not be required to be disclosed to the defense. Conversely if, during the in-camera proceedings, the informant proves to be a material witness for the defense within the meaning of *Roviaro* and *Thornton*, fundamental fairness and fair trial concerns dictate that his identity must be disclosed.

For the reasons above stated, and pursuant to our constitutional authority and the precedent of *Hicks v. State*, supra, this case is remanded for post-trial hearing as above described. If the trial court rules that a new trial is not required, then the defendant may appeal from that judgment in which event the case shall be re-docketed in this court for resolution of any remaining issues and any additional

issues which might be presented by the judgment on remand.

*Case remanded with direction for further proceedings. Banke, P. J., and Beasley, J., concur.*

DECIDED JUNE 2, 1988 —

*Charles R. Hunt*, for appellant.
*Charles R. Ferguson, District Attorney*, for appellee.